## MARK VERGATO vs. COMMERCIAL UNION INSURANCE COMPANY.

No. 98-P-716.

Essex. December 15, 1999. - February 6, 2001.

Present: BECK, DREBEN, & RAPOZA, JJ.

*Practice, Civil,* Summary judgment. *Contract,* Insurance, Construction of contract. *Insurance,* Construction of policy, Motor vehicle insurance, Insured. *Words,* "Owner."

In an action seeking a declaration of automobile insurance coverage for injuries suffered in an accident by the insured's son, who was a passenger in a temporary substitute vehicle rented by the insured but driven by a friend of the son, the son was not entitled to coverage under Part 5, second par., of the Standard Massachusetts Automobile Insurance Policy, where neither he nor his friend had the permission or consent of the owner of the vehicle, the rental company, to drive the car. [827-829]

CIVIL ACTION commenced in the Superior Court Department on December 19, 1996.

The case was heard by *Thayer Fremont-Smith,* J., on motions for summary judgment.

*William P. Rose* for the plaintiff.

*Andre A. Sansoucy* for the defendant.

RAPOZA, J. The plaintiff filed a declaratory action in Superior Court seeking a determination that Commercial Union Insurance Company (Commercial) owed him coverage for injuries suffered in a motor vehicle accident. The plaintiff and Commercial filed cross motions for summary judgment. Following the entry of judgment in favor of Commercial, the plaintiff appealed. We affirm.

*Background.* In 1994, Gail Vergato owned a 1988 Ford Mustang that was listed on an automobile insurance policy

she had purchased from Commercial.[1] She selected additional coverage under Part 5 of the policy entitled "Optional Bodily Injury to Others," with limits of $100,000 per person and $300,000 per accident. Vergato identified her husband and their three children as additional operators under the policy.

On August 16, 1994, Vergato's Ford Mustang was stolen and she subsequently rented a temporary replacement vehicle from Enterprise Rent-A-Car (Enterprise). Vergato designated herself as the operator of the vehicle in the rental agreement. She neither identified any additional drivers in the agreement nor purchased supplemental insurance from Enterprise. Nonetheless, Vergato permitted her children to drive the rental car. On September 10, 1994, her son, Mark Vergato, borrowed the rental car and went to a party. He consumed alcohol at the affair and, consequently, asked a friend who had not been drinking, Amber Kenney, to drive for him. She agreed to do so, but lost control of the vehicle while driving, and struck a tree. Mark sustained serious injuries as a result of the accident. Commercial denied coverage on the ground that Kenney did not have Enterprise's consent to operate the rental car.

Both parties rely upon language contained in Part 5, first and second pars., of the insurance policy, which provides optional coverage for bodily injury to others:

> "Under this Part, we will pay damages to people injured or killed in accidents if you or a household member is legally responsible for the accident. *We will also pay damages if someone else using your auto with your consent is legally responsible for the accident.* The damages we will pay are the amounts the injured person is entitled to collect for bodily injury through a court judgment or settlement.
>
> "This Part is similar to Compulsory Bodily Injury to Others (Part 1). Like the Compulsory Part, this Part pays for accidents involving your auto in Massachusetts. Also like the Compulsory Part, *this part does not pay for the benefit of anyone using an auto without the consent of the owner*" (emphasis supplied).

Relevant to the application of Part 5 is the policy definition of "your auto," which, in pertinent part, reads:

---

[1]Vergato's coverage was pursuant to the Standard Massachusetts Automobile Insurance Policy, Sixth Edition.

"[5]. A. The vehicle or vehicles described on the Coverage Selection Page.

"B. Any auto while used as a temporary substitute for the described auto while that auto is out of normal use because of breakdown, repair, servicing, loss or destruction. But the term 'your auto' does not include a substitute vehicle owned by you or your spouse."

The plaintiff argues that coverage is provided by Part 5 "Optional Bodily Injury to Others," first par., because the Enterprise rental car was a temporary substitute vehicle within the meaning of "your auto" as that term is defined in the policy. Commercial, on the other hand, maintains that the last sentence of Part 5 "Optional Bodily Injury to Others," second par., precludes coverage because the owner of the rental car was Enterprise and Enterprise had not given its consent for either Kenney or Mark to operate the vehicle.

*Discussion.* "Summary judgment will be upheld when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.' " *White* v. *Boston*, 428 Mass. 250, 251-252 (1998), quoting from *McDonough* v. *Marr Scaffolding Co.*, 412 Mass. 636, 638 (1992), quoting from *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). In the absence of an express definition, the interpretation of contract language "presents a question of law for the court, except to the extent disputed facts bear upon such interpretation. . . . The object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." *USM Corp.* v. *Arthur D. Little Sys., Inc.*, 28 Mass. App. Ct. 108, 116 (1989) (citations omitted). See *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 386 (1988) (Part 5 of the Standard Massachusetts Automobile Insurance Policy is subject to a "natural and reasonable interpretation"). We also note that, "[a]lthough the relevant provision is not one which was required by statute . . . it is included in the standard form automobile liability insurance policy . . . which was approved by the Commissioner of Insurance. 'Because the [provision] is . . . controlled by the Division of Insurance rather than the individual insurer, the rule of construction resolving ambiguities in a policy against the insurer is inapplicable . . . . Instead, we must ascertain "the fair meaning of the language used, as applied to the subject

matter" . . . .' *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984)." *Aetna Cas. & Sur. Co.* v. *Sullivan*, 33 Mass. App. Ct. 154, 156 (1992).

The plaintiff seeks a determination that he is entitled to coverage[2] in light of the language in Part 5 of Vergato's policy, which states, "We will also pay damages if someone else using your auto with your consent is legally responsible for the accident." The plaintiff asserts that the damages resulting from Kenney's use of Vergato's rental car fall within the scope of Vergato's policy, which defines "your auto" to include "[a]ny auto . . . used as a temporary substitute for the described auto while that auto is out of normal use because of breakdown, repair, servicing, loss or destruction." The policy also states that "your auto" does not include any substitute vehicle which is owned by the policyholder or the policyholder's spouse.

Vergato's insurance policy thus provides coverage in circumstances where a third party, with Vergato's consent, operates (1) a car that she owns which is listed on the coverage selection page of her policy, or (2) a car that she does not own which is a temporary substitute vehicle for the auto listed in her policy. Were our analysis to end here, we could conclude that the rental car involved in the accident was a temporary substitute vehicle and that, if Vergato had given permission to Kenney to operate the rental car, Commercial was bound to provide coverage for the injuries of Mark, the passenger.[3]

However, it remains our task to harmonize these provisions with the second paragraph of Part 5, "Optional Bodily Injury to Others," which states that "this Part does not pay for the benefit of anyone using an auto without the consent of the *owner*" (emphasis supplied). Thus, the crux of this dispute is the meaning to be attributed to the term "owner," which the policy does not define, when the auto under consideration is a rental car being used as a temporary substitute vehicle.[4]

In instances where the vehicle involved in a loss for which

---

[2]Specifically, the plaintiff seeks a declaration that Commercial is obligated to indemnify Kenney as an additional insured under Vergato's policy.

[3]If our analysis were to end at this point, there would exist a genuine issue of material fact whether Vergato had given consent for either Mark or Kenney to operate the rental vehicle on the night in question.

[4]Although it does not control the issues raised in this case, we note that "owner" has been defined in G. L. c. 90, § 1, as amended by St. 1972, c. 732, § 1, the motor vehicle registration statute, as "a person, other than a lienholder, having title to a vehicle. The term includes a person entitled to the use

coverage is sought is both owned by the policyholder and listed in the policy, Commercial will pay damages if "someone . . . using your auto with your consent is legally responsible for the accident." Part 5, first par. In such cases, coverage is unaffected by the restrictive language in Part 5, second par., which states that "this Part does not pay for the benefit of anyone using an auto without the consent of the owner," because the policyholder and the owner are the same. However, in circumstances where the auto involved in a loss is *not* owned by the policyholder, but coverage is still sought under Part 5, first par., because the vehicle comes under the definition of "your auto" by virtue of its being a "temporary substitute vehicle," the requirement in Part 5, second par., that the "owner" consent to the use of the auto takes on new significance.

As previously noted, the policy expressly states that a car that is treated as a temporary substitute for a covered auto cannot include a vehicle owned by either the policyholder or the policyholder's spouse. Policy, Definitions 5.B. Thus, if Vergato were to be considered the "owner" of the vehicle involved in the accident, as the plaintiff contends she was for purposes of Part 5, second par., such ownership would remove the vehicle from the definition of "your auto" pursuant to Definitions 5.B. ("temporary substitute" vehicle), thereby excluding it from coverage under Part 5, first par. Accordingly, as Vergato cannot be considered the owner of the rental vehicle for purposes of Part 5, second par., without also excluding the car from coverage, the reference to the need for a third party to obtain the consent of the auto's "owner" must be read to refer to the actual titleholder, in this case, Enterprise.[5]

The conclusion that the term "owner" refers to the vehicle's titleholder is consistent with the use of that term elsewhere in the insurance policy. The portion of the policy at issue in this case, Part 5 "Optional Bodily Injury to Others," states that "[t]his Part is similar to Compulsory Bodily Injury to Others

---

and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease . . . and a bailee of any description."

[5]"The definition of the term 'temporary substitute automobile' set forth in an insurance policy which requires that substitute automobile must be one that is 'not owned by named insured' is unambiguous, and such clause contemplates the use of a borrowed car or loaner vehicle when the described automobile is temporarily out of service. A lessee does not hold legal title and, therefore, is not an 'owner' within meaning of clause defining 'temporary substitute automobile.' " 8 Couch, Insurance § 117:93 (3d ed. 1997).

(Part 1)." Part 1 of the contract provides, "We will pay only if you or someone else using your auto with your consent is legally responsible for the accident." It then discusses, among other points, the priority of coverage where there are multiple policies available for coverage: "If someone covered under this Part is using an auto he or she does not own at the time of the accident, the owner's auto insurance must pay its limits before we pay." This section contemplates a situation where, although the operator is covered under the policy and the vehicle in question meets the definition of "your auto," the policyholder does not hold title to the vehicle. In this context the term "owner" clearly refers to the titleholder of the vehicle, not the policyholder.

It is undisputed that neither Mark nor Kenney had the permission of Enterprise, the owner of the rental car, to use the vehicle. Consequently, as a matter of law, Mark is not entitled under Vergato's policy with Commercial to insurance coverage for bodily injuries sustained in the accident.

"As the action is one for declaratory relief, the [Superior] Court judge was required to make a declaration of the rights of the parties." *Dupont* v. *Dracut*, 41 Mass. App. Ct. 293, 297 (1996), citing *Boston* v. *Massachusetts Bay Transp. Authy.*, 373 Mass. 819, 829 (1977). The judgment is to be modified to declare that Commercial is not obligated to indemnify Kenney as an additional insured under Vergato's policy for the accident that occurred on September 10, 1994. As so modified, the judgment of the Superior Court is affirmed.

*So ordered.*